United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

DARLENE C ALEMAN,

Plaintiff,

v.

ASM GLOBAL AT MOSCONE CENTER, et al.,

Defendants.

Case No. 26-cv-02949-LB

**ORDER GRANTING MOTIONS TO DISMISS & MOTION TO STRIKE**

Re: ECF Nos. 65, 66

**INTRODUCTION**

Darlene Aleman, who represents herself, is a security officer at the Moscone Center. Her employer, SMG, fired her in August 2024, and her union, SEIU United Service Workers West (SEIU), grieved the termination. A joint grievance panel agreed in October 2024 to reinstate her, SMG refused to comply, and SEIU filed a second grievance that ended in a January 2026 settlement: reinstatement and two weeks of back pay. Ms. Aleman wants her wages for the rest of the time she was out. The court dismissed her original complaint as preempted by § 301 of the Labor Management Relations Act (LMRA). The court then dismissed her first amended complaint for failure to plausibly plead a hybrid § 301 claim, which requires a breach of the collective-

United States District Court
Northern District of California

bargaining agreement (CBA) by SMG and a breach of the duty of fair representation by SEIU.[1] The court gave her leave to amend a final time and told her what to plead: facts showing what SEIU said or did that was dishonest, discriminatory, or arbitrary, who said or did it, when, and how it harmed her.[2]

Ms. Aleman filed a second amended complaint. SMG and SEIU each move to dismiss it under Rule 12(b)(6). SEIU also moves to strike two paragraphs and an exhibit on the ground that they reproduce privileged emails between SEIU and its lawyers.[3]

The court grants the motions. The second amended complaint largely repeats the earlier theories under new labels, and its new allegations do not show that SEIU acted arbitrarily, discriminatorily, or in bad faith. The dismissal is with prejudice: Ms. Aleman has had three complaints and specific guidance from the court, and the additional facts that she offers would not state a claim if she pleaded them. The court also strikes the privileged emails and the paragraphs that quote them. SEIU disclosed the emails by mistake and acted promptly when it learned of the mistake, so it did not waive the privilege.

## STATEMENT

The earlier orders describe the facts.[4] In short, SMG fired Ms. Aleman on August 12, 2024, and SEIU grieved the termination the next day.[5] At a mediated Board of Adjustment (BOA) hearing on October 29, 2024, a panel of two SMG representatives and two SEIU representatives agreed to reinstate her and reduce the termination to a three-day suspension with no back pay.[6]

---

[1] Orders – ECF Nos. 28, 61. Record citations are to the ECF-stamped page numbers at the top of filed documents.

[2] Order – ECF No. 61 at 9.

[3] Second Am. Compl. – ECF No. 64 (titled “Final Amended Complaint”) (SAC); SMG’s Mot. – ECF No. 65; SEIU’s Mot. – ECF No. 66.

[4] Orders – ECF Nos. 28 at 2–4, 61 at 2–4.

[5] SAC – ECF No. 64 at 2 (¶¶ 8–9).

[6] *Id.* at 2–3 (¶¶ 11–14, 18); October 2024 BOA Agreement, Ex. A to Compl. – ECF No. 1-2 at 19.

SMG then refused to reinstate her on the ground that the agreement was not binding because the mediator had not issued an advisory opinion.[7]

The emails and letters attached to the second amended complaint show how SEIU responded. On November 12, 2024, SEIU's representative, Madison Wise, told Ms. Aleman and her shop steward, Miguel Dejean, that the union was moving on three fronts: (1) it was taking the termination grievance to arbitration "under protest," to preserve its right to arbitrate and to argue to the arbitrator that the matter was already settled; (2) it had filed an unfair-labor-practice charge with the National Labor Relations Board (NLRB); and (3) it had filed a second grievance over SMG's violation of the settlement.[8] A November 21, 2024 letter told her that (1) the union had notified SMG that it was sending the case to arbitration and (2) the case first had to pass the union's internal legal review.[9] On January 13, 2025, Mr. Dejean asked why the union was not suing in federal court to enforce the October 2024 decision. SEIU's lawyer, David Fujimoto, answered the next day. He listed the same three steps and said that courts generally require exhaustion of the grievance process, so a lawsuit risked dismissal while the second grievance was pending.[10] Ms. Aleman alleges that (1) the union never gave SMG the written notice that the CBA requires, within thirty days of a BOA decision, to take a grievance to arbitration, (2) no arbitration took place, and (3) the union's statements about arbitration were therefore false.[11]

In 2025, SEIU and SMG negotiated a settlement that Ms. Aleman rejected, and SEIU scheduled a BOA hearing on the second grievance for November 5, 2025.[12] Ms. Aleman refused to attend. She told Mr. Wise that (1) the second BOA was "illegal," (2) the union had no authority to resolve the matter without her consent, and (3) she had petitioned the state superior court on

---

[7] Order – ECF No. 28 at 3; Opp'n – ECF No. 67 at 5.

[8] Ex. 1 to SAC – ECF No. 64-1 at 1–2.

[9] Ex. 2 to SAC – ECF No. 64-2 at 1.

[10] Ex. 3 to SAC – ECF No. 64-3 at 1–2.

[11] SAC – ECF No. 64 at 2 (¶ 17), 8–9 (¶¶ 46, 58–59), 14 (¶¶ 91–96).

[12] Ex. 4 to SAC – ECF No. 64-4 at 1.

United States District Court
Northern District of California

October 2, 2025, to confirm and enforce the October 2024 decision.[13] The union did not go forward that day. Mr. Wise wrote to her, explained why the union preferred the second grievance's BOA step to arbitrating the termination grievance, and asked whether she would attend a hearing or allow the union to proceed without her. His explanation was that the October 2024 agreement denied back pay, so an arbitrator might award only reinstatement, while the second grievance "calls for additional remedies for the period during which you should have been reinstated."[14] His email also included, by mistake, earlier emails between him and the union's lawyers.[15]

The BOA hearing on the second grievance took place on January 9, 2026, without Ms. Aleman. The panel agreed to reinstate her, reclassify the discipline as a three-day suspension, and pay two weeks of back pay, "inclusive of the period between the original panel ruling and the date Ms. Aleman filed for workers' compensation."[16] She returned to work in March 2026, and SEIU closed the grievances by letter on August 28, 2026.[17]

Ms. Aleman sued SMG in state court on January 29, 2026, and SMG removed the case.[18] After the court's two orders, she filed the second amended complaint on October 16, 2026. It pleads a breach of the CBA by SMG and a breach of the duty of fair representation by SEIU.[19] Both defendants moved to dismiss, and SEIU moved to strike paragraphs 65 and 66 and Exhibit 4.[20] SMG does not contest, for purposes of its motion, that the complaint adequately alleges a breach of the CBA.[21] All parties consented to magistrate-judge jurisdiction.[22]

---

[13] *Id.* at 3.

[14] *Id.* at 1. Ms. Aleman alleges that she received the email on November 14, 2025. SAC – ECF No. 64 at 10 (¶ 65).

[15] Wise Decl. – ECF No. 66-2 at 2 (¶¶ 4–5).

[16] Ex. 5 to SAC – ECF No. 64-5 at 1; January 2026 BOA Agreement, Ex. B to Compl. – ECF No. 1-2 at 21.

[17] Ex. 5 to SAC – ECF No. 64-5 at 1; SAC – ECF No. 64 at 12 (¶ 76).

[18] Order – ECF No. 61 at 4.

[19] SAC – ECF No. 64 at 12–15 (¶¶ 78–106).

[20] SMG's Mot. – ECF No. 65; SEIU's Mot. – ECF No. 66 at 18–19; Proposed Order – ECF No. 66-3 at 2. The court can decide the dispute without a hearing. Civil L.R. 7-1(b).

[21] SMG's Mot. – ECF No. 65 at 10 n.3.

[22] 28 U.S.C. § 636(c); Consents – ECF Nos. 13, 26, 58.

United States District Court
Northern District of California

## LEGAL STANDARD

### 1. Rule 12(b)(6)

A complaint must plead enough facts to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Labels and conclusions do not suffice, and facts that are merely consistent with liability stop short of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts factual allegations as true and construes them favorably to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). The court also considers the exhibits attached to the complaint and need not accept allegations that those exhibits contradict. Fed. R. Civ. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Because Ms. Aleman represents herself, the court construes her complaint liberally: she supplies the facts, and the court applies the law. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

A self-represented plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up). Facts raised for the first time in an opposition do not bear on whether the complaint states a claim, but the court considers them in deciding whether to allow amendment. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). A plaintiff's repeated failure to cure identified deficiencies "is a strong indication that the plaintiffs have no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (cleaned up).

### 2. Rule 12(f)

The court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). Impertinent matter includes allegations that are irrelevant and inadmissible. *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). The court also has

inherent power to strike improperly filed material from its docket. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).

## ANALYSIS

### 1. SEIU's Motion to Strike

Exhibit 4 reproduces the email that Mr. Wise sent Ms. Aleman in November 2025. Below his message is a chain of November 5, 2025 emails among Mr. Wise, the union's lawyers (Tiffany Crain and Mr. Fujimoto), and a union colleague: Mr. Wise forwarded Ms. Aleman's email refusing to attend the BOA hearing and asked how to proceed, Ms. Crain gave advice, and Mr. Wise asked a follow-up question.[23] Paragraphs 65 and 66 of the complaint quote and characterize those emails.[24] SEIU contends that (1) the emails are privileged, (2) Mr. Wise included them by mistake, and (3) the union did not learn of the mistake until it read the complaint, after which it promptly asked Ms. Aleman to sequester the emails and stipulate to strike them.[25] Ms. Aleman responds that (1) the disclosure was voluntary and outside discovery, (2) the union did not act promptly, and (3) the emails expose fraud.[26]

The emails are privileged, and SEIU did not waive the privilege. They are communications between a client's representative and its lawyers, made to obtain legal advice, and Ms. Aleman does not contend otherwise.[27] Federal law governs privilege in this federal-question case. Fed. R. Evid. 501. Rule 502(b), on which SEIU relies, addresses disclosures "made in a federal proceeding," and Mr. Wise sent his email before this case began. Fed. R. Evid. 502(b). But the rule adopted the majority common-law approach, and Ninth Circuit law is to the same effect: when a privileged communication is disclosed inadvertently or involuntarily, the privilege is

---

[23] Ex. 4 to SAC – ECF No. 64-4 at 1–3.

[24] SAC – ECF No. 64 at 10 (¶¶ 65–66).

[25] SEIU's Mot. – ECF No. 66 at 18–19; Wise Decl. – ECF No. 66-2 at 2 (¶¶ 4–5); Fujimoto Decl. – ECF No. 66-1 at 2 (¶¶ 2–3), 4.

[26] SAC – ECF No. 64 at 11 (¶ 73); Opp'n – ECF No. 67 at 10–11.

[27] Wise Decl. – ECF No. 66-2 at 2 (¶ 4).



United States District Court
Northern District of California

preserved if the holder "has made efforts reasonably designed to protect and preserve the privilege," and it is waived if the holder "fails to pursue all reasonable means of preserving the confidentiality of the privileged matter." *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992) (cleaned up); Fed. R. Evid. 502 advisory committee's note; *see Multiquip, Inc. v. Water Mgmt. Sys. LLC*, No. CV 08-403-S-EJL-REB, 2009 WL 4261214, at *3–4 & nn.3–4 (D. Idaho Nov. 23, 2009) (applying Rule 502(b) to a privileged email misdirected to a third party outside discovery).

SEIU meets that standard. Mr. Wise declares that (1) he did not mean to forward his lawyers' emails, (2) his practice is to check for such material before writing to a represented employee, and (3) he did not notice the mistake until he read the complaint.[28] Ms. Aleman suggests that the disclosure was deliberate or grossly careless, but she offers no evidence, and one failure to trim an email thread does not show gross carelessness.[29] The union's lawyers learned of the disclosure on October 21, 2026, five days after Ms. Aleman filed the complaint. They wrote to her two days later asking her to sequester the emails and stipulate to strike them, and SEIU moved to strike a week after that, when she had not responded.[30]

Ms. Aleman's arguments do not change the result. That the disclosure occurred outside discovery does not make it voluntary: Mr. Wise meant to send his message, not his lawyers' advice. The eleven months that passed before the union acted do not show delay, because nothing suggests that the union knew of the disclosure before it read the complaint. A privilege holder need not re-review what it has sent; it must follow up on obvious signs of a mistake. Fed. R. Evid. 502 advisory committee's note. And the crime-fraud exception reaches only communications made to obtain advice for the commission of a crime or fraud. *United States v. Zolin*, 491 U.S. 554, 562–63 (1989). The emails show a union representative asking the union's lawyers how to

---

[28] *Id.* (¶¶ 4–5).

[29] SAC – ECF No. 64 at 11 (¶ 73).

[30] Fujimoto Decl. – ECF No. 66-1 at 2 (¶¶ 2–3), 4.

respond to Ms. Aleman's objections and a lawyer advising him how to communicate with her. They would not change the result below even if the court considered them.

The court strikes paragraphs 65 and 66 and the November 5, 2025 emails among Mr. Wise, the union's lawyers, and the union colleague that Exhibit 4 reproduces (ECF No. 64-4 at 1–3). Ms. Aleman may not use privileged communications to support her claim, so they are impertinent matter under Rule 12(f), and the court's inherent power reaches them in any event. *In re 2TheMart.com*, 114 F. Supp. 2d at 965; *Ready Transp.*, 627 F.3d at 404. Because the stricken material is privileged, compelling reasons support sealing the filings that contain it. The rest of Exhibit 4 (Mr. Wise's message to Ms. Aleman and her November 5, 2025 email to him) is not privileged, and SEIU relies on it, so the court does not strike it.[31] The court disregards paragraphs 67 and 68 to the extent that they characterize the stricken emails.

## 2. The Motions to Dismiss

### 2.1 The duty of fair representation

A hybrid § 301 claim requires both a breach of the CBA by the employer and a breach of the duty of fair representation by the union. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983); *Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 914–15 (9th Cir. 2006). A union breaches the duty when its conduct toward a member is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). When the challenged conduct involved the union's judgment, the member must show discrimination or bad faith, and a court does not second-guess the judgment unless it is "so far outside a wide range of reasonableness as to be irrational." *Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 879–80 (9th Cir. 2007); *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (cleaned up). Bad faith requires "fraud, deceitful action or dishonest conduct." *Beck*, 506 F.3d at 880 (cleaned up). When the conduct was procedural or ministerial, the member may also prevail by showing that it was arbitrary, but an unintentional lapse breaches the duty only if it "substantially injured" her, as

[31] SEIU's Mot. – ECF No. 66 at 13, 16.



United States District Court
Northern District of California

when a missed deadline "completely extinguishes the employee's right to pursue his claim." *Id.* at 881; *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1272–74 (9th Cir. 1983). Negligence and mistaken judgments about how to handle a grievance are not enough. *Peterson v. Kennedy*, 771 F.2d 1244, 1253–55 (9th Cir. 1985); *United Steelworkers v. Rawson*, 495 U.S. 362, 372–73 (1990). And a member has no absolute right to arbitration: a union may settle a grievance short of arbitration and without her consent. *Vaca*, 386 U.S. at 191–92.

SEIU's response to SMG's refusal to honor the October 2024 decision was an exercise of judgment. The complaint's premise is that once the panel decided, the union's role became "ministerial": it could only enforce the decision, and anything else was arbitrary.[32] That is a legal conclusion, and it is mistaken. SMG disputed that the decision bound it. Whether to answer by suing, by grieving the breach, by arbitrating, by going to the NLRB, or by some combination was a choice about forum, timing, and remedy. Even a union's failure to enforce an arbitration award "must still be viewed in the overall test of whether such action was arbitrary, discriminatory or in bad faith." *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 283 (2d Cir. 2005). The union's choice was not irrational. Within two weeks of SMG's refusal, the union had filed the second grievance and the NLRB charge, and the second grievance produced Ms. Aleman's reinstatement.[33] The complaint also calls the second grievance a "fiction" and says that the union took "no action." Those assertions cannot be squared with its other allegations and its exhibits, which describe the grievance, a January 2025 meeting on it, the BOA hearing, and the settlement.[34] *Sprewell*, 266 F.3d at 988. *General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963), which Ms. Aleman cites, holds that a federal court may enforce a final and binding joint-committee award.[35] It does not hold that a union must seek enforcement there.

---

[32] SAC – ECF No. 64 at 4 (¶¶ 27–32), 7–8 (¶¶ 36–43), 14 (¶¶ 88–90).

[33] Ex. 1 to SAC – ECF No. 64-1 at 1–2; Ex. 5 to SAC – ECF No. 64-5 at 1.

[34] SAC – ECF No. 64 at 10 (¶ 62), 11 (¶ 70), 14–15 (¶¶ 95–96, 99–102); Ex. 5 to SAC – ECF No. 64-5 at 1.

[35] Opp'n – ECF No. 67 at 9.

The union's statements about arbitration do not show bad faith. The complaint alleges that the union said in November 2024 and January 2025 that it was taking the termination grievance to arbitration but never did.[36] An untrue statement is not a dishonest one unless the speaker knew that it was untrue or meant to mislead, and the complaint pleads no facts suggesting either. It alleges that the union lied to "derail" her reinstatement and to keep her out of court.[37] But the union first said that it was arbitrating in November 2024, while it was pressing SMG on two other fronts and two months before anyone mentioned a lawsuit.[38] Its November 21, 2024 letter said that arbitration depended on the union's internal legal review.[39] And when Ms. Aleman asked for arbitration a year later, the union told her why it preferred to take the second grievance first: an arbitrator might award only what the October 2024 agreement gave her, which was reinstatement without back pay.[40] The facts alleged are consistent with a union that changed tactics and did not say so promptly. *Iqbal*, 556 U.S. at 678. As the court said in the last order, that is at most negligence.[41] In the last round, Ms. Aleman conceded that the union's decision not to arbitrate was a discretionary judgment.[42] The mediator's remark in January 2025 that the contract language "strongly supports" the argument that an arbitrator would enforce the October 2024 decision does not help her. It bears on the wisdom of the union's choice, not its honesty.[43]

The alleged failure to give SMG notice of arbitration within thirty days does not show arbitrary conduct.[44] The court accepts the allegation as true. But the lapse did not injure Ms. Aleman in the way that the cases require. In *Dutrisac*, the union filed for arbitration two weeks late, and the arbitrator rejected the grievance as untimely. 749 F.2d at 1272–74; *see also Robesky*

---

[36] SAC – ECF No. 64 at 8–10 (¶¶ 46, 49, 55–61), 14 (¶¶ 93–96).

[37] *Id.* at 8 (¶ 46), 11 (¶ 71), 15 (¶¶ 97–98).

[38] Ex. 1 to SAC – ECF No. 64-1 at 1–2; Ex. 3 to SAC – ECF No. 64-3 at 1.

[39] Ex. 2 to SAC – ECF No. 64-2 at 1.

[40] Ex. 4 to SAC – ECF No. 64-4 at 1, 3.

[41] Order – ECF No. 61 at 8.

[42] *Id.* at 7.

[43] SAC – ECF No. 64 at 10 (¶¶ 62–64).

[44] *Id.* at 14 (¶¶ 91–94).

*v. Qantas Empire Airways Ltd.*, 573 F.2d 1082, 1088–91 (9th Cir. 1978) (union's failure to tell employee that her grievance had been withdrawn from arbitration could breach the duty where she then rejected a reinstatement offer that was her only chance to return). Ms. Aleman's grievance was not lost. The union pursued it through the second grievance, and she was reinstated.[45] On her theory, nothing remained to arbitrate: the CBA provides for arbitration only if the BOA "is unable to resolve the matter," and she alleges that the October 2024 decision resolved it.[46] She calls arbitration "redundant."[47] She alleges that the union's statements kept her from going to court sooner, which compounded her damages.[48] But she pleads no facts suggesting that an earlier lawsuit would have returned her to work sooner than the grievance did. When she did go to court, in October 2025, the union's grievance produced her reinstatement three months later.[49]

Mr. Fujimoto's statement about federal jurisdiction was not a lie. He told Mr. Dejean that (1) courts generally require exhaustion of the grievance process and (2) a lawsuit filed while the second grievance was pending risked dismissal.[50] The first point fairly states the general rule. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987). The second was a lawyer's assessment of risk. Even if it was wrong, mistaken legal advice is negligence, not bad faith. *Peterson*, 771 F.2d at 1253–55. The complaint's related allegation, that the union filed the second grievance to keep the dispute out of court, does not fit the chronology: the union filed that grievance in early November 2024, to challenge SMG's refusal to comply, two months before anyone raised a lawsuit.[51]

The second BOA and the settlement do not show bad faith either. Ms. Aleman calls the second grievance and its BOA hearing "non-contractual," but that is a disagreement about what the CBA

---

[45] *Id.* at 15 (¶ 102); Ex. 5 to SAC – ECF No. 64-5 at 1.

[46] SAC – ECF No. 64 at 2 (¶ 17), 4 (¶ 27), 7 (¶ 40), 9 (¶¶ 50–52).

[47] Opp'n – ECF No. 67 at 9.

[48] SAC – ECF No. 64 at 12 (¶ 77), 15 (¶¶ 97–98).

[49] Ex. 4 to SAC – ECF No. 64-4 at 3; Ex. 5 to SAC – ECF No. 64-5 at 1.

[50] SAC – ECF No. 64 at 11 (¶ 69); Ex. 3 to SAC – ECF No. 64-3 at 2.

[51] SAC – ECF No. 64 at 11 (¶ 70); Ex. 1 to SAC – ECF No. 64-1 at 1–2; Ex. 3 to SAC – ECF No. 64-3 at 1.

United States District Court
Northern District of California

allows, and a union's good-faith reading of the contract is a matter of judgment even if the reading is wrong.[52] *Id.* at 1254–55. The union could settle without her consent. *Vaca*, 386 U.S. at 191–92. It asked her to attend the hearing, and she refused.[53] She alleges that the union settled "on terms favorable to ASM global" to moot her claims, knowing that she had "taken independent, legal action."[54] That action was her state-court petition to enforce the October 2024 decision. She did not file this case until twenty days after the settlement.[55] Her petition did not end the union's authority as her exclusive representative, and nothing alleged suggests that the union settled to help SMG rather than to return her to work. The settlement reinstated her, reduced the discipline, and paid some back pay. As the court said before, a settlement for less than the member wanted is not, without more, bad faith.[56]

Because the complaint does not plausibly plead a fair-representation breach, it does not state a hybrid § 301 claim against either defendant. *DelCostello*, 462 U.S. at 164–65; *Bliesner*, 464 F.3d at 914–15.[57]

**2.2 Leave to amend**

Further amendment would be futile. Ms. Aleman has filed three complaints. The last order told her what was missing and what to plead, and said that the amendment would be her last.[58] The second amended complaint repeats the earlier theories. Its principal new allegation, the missed notice, fails for a reason that more pleading would not cure: the lapse did not cost her the grievance, because the union obtained her reinstatement through the second grievance.

Her opposition adds a fact that the complaint does not plead: the union agreed to cap her back pay at two weeks because it wrongly believed that she was disabled and on workers'

---

[52] SAC – ECF No. 64 at 11 (¶ 70), 15 (¶¶ 99–100).

[53] Ex. 4 to SAC – ECF No. 64-4 at 1, 3.

[54] SAC – ECF No. 64 at 15 (¶¶ 101–05).

[55] Ex. 4 to SAC – ECF No. 64-4 at 3; Order – ECF No. 61 at 7.

[56] Order – ECF No. 61 at 8.

[57] The court does not reach the defendants' alternative argument that the claim is untimely. SMG's Mot. – ECF No. 65 at 12–13; SEIU's Mot. – ECF No. 66 at 16–18; Opp'n – ECF No. 67 at 8, 10.

[58] Order – ECF No. 61 at 9.

compensation, and it never checked.[59] A union must make at least a minimal investigation before it resolves a grievance, and a union that settles without hearing the grievant's side can breach its duty. *Tenorio v. NLRB*, 680 F.2d 598, 601 (9th Cir. 1982). But Ms. Aleman's exhibits show why the union lacked her side. The second grievance sought back pay for the period after October 2024. The union asked her to attend the hearing on it and, when she refused, asked whether she would attend or allow the union to proceed without her. She had told the union that it had no authority to resolve the matter, and she had gone to court on her own.[60] And the back-pay term rests on a fact that she admits: she filed a workers' compensation claim.[61] The union's decision to compromise the back-pay claim in light of that filing, in a settlement that returned her to work, was a judgment about what it could obtain. A mistaken judgment is not arbitrary or dishonest. *Peterson*, 771 F.2d at 1254–55.[62]

The dismissal is with prejudice. *Akhtar*, 698 F.3d at 1212; *Zucco*, 552 F.3d at 1007.

### 3. SMG's Name

Ms. Aleman again contends that SMG has misidentified itself, and she accuses its counsel of violating Rule 11.[63] The court addressed the point in the last order and does not revisit it. SMG's

---

[59] Opp'n – ECF No. 67 at 7–8.

[60] Ex. 4 to SAC – ECF No. 64-4 at 1, 3; SAC – ECF No. 64 at 15 (¶ 102).

[61] Ex. 5 to SAC – ECF No. 64-5 at 1; Opp'n – ECF No. 67 at 7–8.

[62] In reaching this conclusion, the court — despite its order that this was Ms. Aleman's last chance to amend — considered whether to allow an amended complaint. Order – ECF No. 61 at 9. The second amended complaint and the opposition raise two matters that the earlier pleadings did not: (1) the union's alleged failure to give notice of arbitration while telling Ms. Aleman that arbitration was under way, and (2) its agreement to limit her back pay on a premise that it allegedly never checked with her. As pleaded, neither states a claim. The first identifies no injury, and the second is not in the complaint. But the Ninth Circuit has recognized claims on similar facts when the union's lapse cost the employee something concrete. *Dutrisac*, 749 F.2d at 1272–74; *Robesky*, 573 F.2d at 1088–91; *Tenorio*, 680 F.2d at 601. The issue is whether Ms. Aleman could plead such a claim. *Akhtar*, 698 F.3d at 1212. Under this approach, the court might have allowed an amended complaint, limited to alleging specific facts showing (1) what Ms. Aleman lost because the union did not give the notice or did not tell her that arbitration would not go forward, such as a settlement offer that she rejected and would have accepted, and (2) what the union knew about her workers' compensation claim when it agreed to the back-pay term, what it asked her, and what she would have told it. That said, the order reflects the court's ultimate conclusion (given the exhibits) that the dismissal should be with prejudice.

[63] Opp'n – ECF No. 67 at 2.

name has no bearing on whether the complaint states a claim, and her request that the court weigh counsel's candor against SMG calls for credibility findings that the court does not make on a motion to dismiss.[64]

## CONCLUSION

The court grants the motions to dismiss. Because the second amended complaint does not plausibly plead a fair-representation breach, and because further amendment would be futile, the hybrid § 301 claim is dismissed with prejudice as to both defendants.

The court grants SEIU's motion to strike. Paragraphs 65 and 66 of the second amended complaint and the November 5, 2025 emails among Mr. Wise, the union's lawyers, and a union colleague in Exhibit 4 (ECF No. 64-4 at 1–3) are stricken. The Clerk of Court must seal ECF Nos. 64, 64-4, and 64-6. Within fourteen days, SEIU must file copies of those documents with the stricken material redacted.

The court will enter a separate judgment.

This resolves ECF Nos. 65 and 66.

**IT IS SO ORDERED.**

Dated: November 24, 2026



LAUREL BEELER
United States Magistrate Judge

[64] Order – ECF No. 61 at 9–10.